Matthew C. Crane, Pro Hac Vice
BAUER MOYNIHAN & JOHNSON LLP
2101 4^(TH) Avenue - 24th Floor
Seattle, WA 98121
Telephone: (206) 443-3400
Facsimile: (206) 448-9076
mccrane@bmjlaw.com

H. Conner Thomas, AKB#8006049
LEWIS & THOMAS PC
110 Front Street, Suite 211
Nome, AK 99762
Telephone: (907) 443-5226
Facsimile: (907) 443-5098
connernomelaw@gci.net

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

BONANZA FUEL, INC.,

        Plaintiff,

v.

DELTA WESTERN, INC.,

        Defendant.

CASE NO. 2:12-CV-0001-TMB

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Plaintiff Bonanza Fuel, Inc. by and through undersigned counsel alleges as follows:

1. Bonanza Fuel, Inc. ("Bonanza Fuel") is a corporation domiciled in the State of Alaska with its principal place of business at all material times in Nome, Alaska.

2. Bonanza Fuel is a seller of petroleum products in Nome and the surrounding region, including home heating fuel, diesel fuel, and gasoline, with a 3.6 million gallon tank farm at the Port of Nome that receives bulk fuel delivered by marine barges.

3. Delta Western, Inc. ("Delta Western") is a corporation domiciled in the State of Washington with its principal place of business at all material times in Anchorage, Alaska.

4. Delta Western is a supplier and distributor of petroleum products throughout the State of Alaska, including home heating fuel, diesel fuel, and gasoline delivered by barge.

5. This Court has ruled it has jurisdiction over the subject matter of this case by diversity of citizenship, and has jurisdiction over the parties to this action.

6. Venue is proper in Nome as the action arose in this district and in Nome, and this complaint was filed in Nome Superior Court before being removed to this Court by defendant.

7. On or about March 8, 2011, Bonanza Fuel issued a written competitive request for fuel supply quotes for its 2011 projected fuel requirements to three Alaska suppliers: Delta Western, Crowley Maritime Corporation, and Vitus Marine, LLC.

8. In its request for quotes, Bonanza Fuel told Delta Western and the other potential suppliers they needed to supply and deliver to Bonanza Fuel's tanks in Nome an estimated combined total of approximately 2,850,000 gallons of home heating fuel, diesel fuel, and gasoline during the 2011 barge season, an amount which was subject to change and which increased during the 2011 barge season to approximately 3,215,000 gallons.

9. Bonanza Fuel expressly told Delta Western and the other potential suppliers in the request for quotes that it wanted all home heating fuel, diesel, and gasoline priced or loaded on barges in the June, July, and August/September 2011 timeframes for transportation and delivery to Nome, known as the summer barge season.

10. Any timeframe later than August/September for pricing or loading resulted in a substantial risk that by the time of delivery the harbor at the Port of Nome would become iced over for the winter and prevent barges from being able to deliver any fuel

ATTORNEYS AT LAW

BAUER
MOYNIHAN
& JOHNSON LLP

2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121

(206) 443-3400
FAX (206) 448-9076

until late the following spring.

11. As the sole supplier of Bonanza Fuel's home heating fuel, diesel, and gasoline requirements for the five previous years, 2006, 2007, 2008, 2009, and 2010, the latter year though Norton Sound Economic Development Corporation as the contracting party, Delta Western knew that Bonanza Fuel required the delivery of all its fuel during the summer barge season, as once the Nome harbor freezes over for the winter any such delivery would be impossible until late spring, resulting in Bonanza Fuel running out of fuel before the first barge could arrive the following year and causing Bonanza Fuel great harm.

12. In response to Bonanza Fuel's request for quotes, Delta Western, Crowley Maritime, and Vitus Marine each submitted quotes to sell to Bonanza Fuel and deliver to Nome all of Bonanza Fuel's 2011 requirements for home heating fuel, diesel, and gasoline.

13. On or about March 15, 2011, Delta Western provided its quote for the sale and delivery of Bonanza Fuel's 2011 fuel requirements, a copy of which is attached as Exhibit 1 to this first amended complaint and incorporated herein.

14. On or about April 5, 2011, Bonanza Fuel informed Delta Western it was selected to supply all of Bonanza Fuel's fuel requirements for 2011.

15. That same day, Delta Western confirmed that it had been selected to supply Bonanza Fuel's requirements for 2011, and advised it would forward a contract the following week, but it never did so.

16. On July 1, 2011, Delta Western delivered to Bonanza Fuel approximately 1,850,000 gallons combined of home heating fuel, diesel, and gasoline, fulfilling approximately 58% of Bonanza Fuel's contracted requirements for 2011 and leaving the remaining approximately 42% for final delivery later in the summer.

17. Delta Western invoiced Bonanza Fuel more than $6,600,000 in accordance

ATTORNEYS AT LAW
BAUER
MOYNIHAN
& JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

with the contracted terms for the fuel delivered on July 1, 2011 and was fully paid by Bonanza Fuel.

18. Later in July, and then again several times in early and mid-August, Bonanza Fuel repeatedly asked Delta Western when the remaining approximately 1,300,000 gallons combined of home heating fuel, diesel, and gasoline would be delivered, but Delta Western failed to respond.

19. Finally, on August 23, 2011 Delta Western confirmed it would deliver the remaining approximately 1,300,000 gallons of fuel on two separate barges, first during the time period September 1-5, 2011, and the last one in mid-October 2011.

20. Mid-October was late in the summer barge season to make a final fuel delivery, but Delta Western promised Bonanza Fuel it would deliver the fuel by that deadline.

21. By September 8, 2011, Delta Western had failed to make the first of the two final fuel deliveries to Bonanza Fuel during the period September 1-5 as agreed, without any notice or explanation whatsoever. When Bonanza Fuel asked Delta Western that day for the estimated time of arrival for its fuel, Delta Western represented to Bonanza Fuel that it had a "significant wx delay in the past 10 days," meaning a significant weather delay, and that Delta Western was "going to need to consolidate" the two final fuel deliveries in one late October voyage.

22. Unbeknownst to Bonanza Fuel, Delta Western's representations regarding the reason it failed to deliver Bonanza Fuel's fuel as previously agreed were knowingly false. The real reason Delta Western failed to deliver fuel during the agreed period September 1-5, 2011 was that it ordered the barge containing Bonanza Fuel's fuel to turn around in the middle of its voyage to Nome in order to use that barge to deliver fuel for another Delta Western customer, the Red Dog Mine, solely for purposes of greater profit to Delta Western. Delta Western knowingly misrepresented its failure to deliver Bonanza

ATTORNEYS AT LAW
BAUER
MOYNIHAN
& JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

BONANZA FUEL V. DELTA WESTERN
CASE NO. 2:12-CV-0001-TMB
Page 4 of 10

Fuel's fuel by falsely disguising it as a weather delay in order to mislead Bonanza Fuel into believing that Delta Western's failure was unavoidable and excusable and therefor to induce Bonanza Fuel into accepting that it had no choice but to wait until the end of October for its final fuel delivery.

23. In response that same day to Delta Western's misrepresentations but reasonably believing they were true, Bonanza Fuel informed Delta Western that November 1, 2011 was the last possible delivery date. Any later date seriously risked the port of Nome freezing over for the winter and preclude fuel delivery thereafter until the following spring, leaving Bonanza Fuel and the residents of Nome and the surrounding region far short of the fuel needed to safely get through the winter, to Bonanza Fuel's great harm, all of which Delta Western knew and recklessly disregarded.

24. Bonanza Fuel justifiably relied upon Delta Western's representations and promises that it would deliver all remaining approximately 1,300,000 gallons of required fuel by the end of October 2011, and waited for Delta Western to deliver as promised and agreed. Had Delta Western told Bonanza Fuel the truth on September 8, 2011 about the reason it aborted the voyage and fuel delivery to Nome, Bonanza Fuel would have insisted its fuel be delivered earlier and Delta Western would have done so.

25. Delta Western failed to keep its promise and never delivered Bonanza Fuel's remaining fuel requirements as contracted in March 2011 before the end of the 2011 summer barge season or before the end of October 2011 as later represented and promised.

26. After the Nome harbor iced over in late November 2011, preventing any barges from entering the harbor to deliver fuel, Bonanza Fuel demanded that Delta Western make all necessary arrangements to deliver the remainder of its fuel requirements as promised and agreed, and upon which promises and agreement Bonanza Fuel had relied to its detriment and great harm.

ATTORNEYS AT LAW
BAUER
MOYNIHAN
& JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

27. On December 2, 2011, Delta Western repudiated its contractual obligations, falsely and outrageously claiming it was excused from having to perform its agreements by force majeure and impracticality of performance and falsely claiming that Bonanza Fuel had failed to cooperate, while knowing full well that repudiating its obligations would cause great harm to Bonanza Fuel without adequate home heating fuel, diesel, or gasoline for the winter and spring.

28. After Delta Western repudiated its contract, Bonanza Fuel was left with no option but to obtain the remaining approximately 1,300,000 gallons of its fuel requirements by any other available fuel supplier.

29. Bonanza Fuel thereafter contracted with Vitus Marine to supply its remaining fuel requirements, which in turn hired the Russian ice-class tank vessel RENDA to deliver the fuel to Nome harbor, escorted by the United States Coast Guard icebreaker HEALY.

30. Bonanza Fuel made all necessary arrangements to cover and replace the delivery of the remaining approximately 1,300,000 gallons of home heating fuel, diesel, and gasoline required, including obtaining a Jones Act waiver from the Secretary of the Department of Homeland Security to transport the required fuel by the non-U.S. flag RENDA to Nome as necessary in the interest of national defense.

31. Bonanza Fuel was unable to cover its home heating oil requirements because of unavailability in the petroleum market, and substituted diesel oil to blend with its home heating oil in its existing inventory to provide a substitute at a loss.

32. On January 14, 2012, the RENDA, escorted by the HEALY, arrived adjacent to the Nome harbor entrance and began delivery of 1,335,247 gallons of diesel and gasoline to fulfill Bonanza Fuel's 2011 fuel requirements.

33. On or about January 19, 2012, all 1,335,247 gallons of diesel and gasoline required by Bonanza Fuel was delivered, which Delta Western had promised and agreed

ATTORNEYS AT LAW
BAUER
MOYNIHAN
& JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

BONANZA FUEL V. DELTA WESTERN
CASE NO. 2:12-CV-0001-TMB
Page 6 of 10

to deliver or its equivalent prior to repudiation of its contract.

## COUNT I

## BREACH OF CONTRACT

34. All allegations set forth in paragraphs 1-33, above, are re-alleged and restated.

35. Delta Western breached and repudiated its contract to sell and deliver the remaining approximately 1,300,000 gallons combined of home heating fuel, diesel, and gasoline to Bonanza Fuel in fulfillment of its requirements contract before the Nome harbor iced over in 2011.

36. Delta Western's breach and repudiation has caused Bonanza Fuel damages in an amount to be proved at trial but greatly exceeding $1,500,000, the difference between what Bonanza Fuel would have paid Delta Western and what Bonanza Fuel paid Vitus Marine, plus all incidental, consequential, and punitive damages as may be awarded by the trier of fact, and for which Delta Western is fully liable.

## COUNT II

## BREACH OF U.C.C. SALE

37. All allegations set forth in paragraphs 1-36, above, are re-alleged and restated.

38. Delta Western breached its contract of sale under the Uniform Commercial Code as enacted in the State of Alaska, AS 45.02 *et. seq.*, when it breached and repudiated its contract to sell and deliver the remaining approximately 1,300,000 gallons combined of home heating fuel, diesel, and gasoline to Bonanza Fuel in fulfillment of its requirements contract before the Nome harbor iced over in 2011.

39. Delta Western's breach of its contract of sale under the U.C.C. has caused Bonanza Fuel damages in an amount to be proved at trial as allowed by AS 45.02 *et. seq.*, but greatly exceeding $1,500,000, the difference between what Bonanza Fuel would have

ATTORNEYS AT LAW
BAUER
MOYNIHAN
& JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

paid Delta Western and what Bonanza Fuel paid Vitus Marine, plus all incidental, consequential, and punitive damages as may be awarded by the trier of fact, and for which Delta Western is fully liable.

## COUNT III

### PROMISSORY ESTOPPEL

40. All allegations set forth in paragraphs 1-39, above, are re-alleged and restated.

41. Delta Western breached and repudiated its promises to sell and deliver the remaining approximately 1,300,000 gallons combined of home heating fuel, diesel, and gasoline to Bonanza Fuel in fulfillment of its requirements contract before the Nome harbor iced over in 2011, upon which Bonanza Fuel reasonably relied to its detriment and great harm.

42. Delta Western's breach of its promises has caused Bonanza Fuel damages in an amount to be proved at trial, but greatly exceeding $1,500,000, the difference between what Bonanza Fuel would have paid Delta Western and what Bonanza Fuel paid Vitus Marine, plus all incidental, consequential, and punitive damages as may be awarded by the trier of fact, and for which Delta Western is fully liable.

## COUNT IV

### KNOWING MISREPRESENTATION OR DECEIT

43. All allegations set forth in paragraphs 1-42, above, are re-alleged and restated.

44. Delta Western knowingly misrepresented to or deceived Bonanza Fuel about the reasons it failed to deliver fuel to Bonanza Fuel when it knew it made false statements of fact that it intended to induce Bonanza Fuel to rely upon, and which Bonanza Fuel justifiably did rely upon, to its great harm and detriment.

ATTORNEYS AT LAW
BAUER
MOYNIHAN
& JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

BONANZA FUEL V. DELTA WESTERN
CASE NO. 2:12-CV-0001-TMB
Page 8 of 10

45. Delta Western's knowing misrepresentations were outrageous, malicious, and/or made with reckless indifference to Bonanza Fuel's interests, and consciously made solely for the purpose of increasing Delta Western's profits to the great risk and injury to Bonanza Fuel and the residents of Nome and the surrounding region.

46. Delta Western's knowing misrepresentations has caused Bonanza Fuel damages in an amount to be proved at trial, but greatly exceeding $1,500,000, the difference between what Bonanza Fuel would have paid Delta Western and what Bonanza Fuel paid Vitus Marine, plus all incidental, consequential, and punitive damages as may be awarded by the trier of fact, and for which Delta Western is fully liable.

## DEMAND FOR JURY

47. Pursuant to Article I, Section 16 of the Constitution of the State of Alaska, and Federal Rule of Civil Procedure 38, Bonanza Fuel hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, having asserted its allegations against defendant as set forth above, plaintiff Bonanza Fuel, Inc. prays for the following relief:

1. Award of all direct, incidental, consequential, and punitive damages as permitted by law and A.S. 09.17.020;

2. Reasonable attorneys' fees as allowed by Alaska Civil Rule 82;

3. Costs and expenses as may be allowed by the Court; and

4. Such other and further relief this Court deems just and equitable.

DATED this 29th day of October, 2012.

BAUER MOYNIHAN & JOHNSON LLP

s/ Matthew C. Crane
Matthew C. Crane, Pro Hac Vice
Attorneys for Plaintiff

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

LEWIS & THOMAS PC

s/ H. Conner Thomas
H. Conner Thomas, AKSB No. 8006049
Attorneys for Plaintiff

**Certificate of Service**

I hereby certify that on October 29, 2012, a copy of the foregoing First Amended Complaint for Damages was served electronically on Timothy J. Petumenos and Holly C. Wells, counsel of record for Delta Western, Inc. in this action.

BAUER MOYNIHAN & JOHNSON LLP

s/ Matthew C. Crane

ATTORNEYS AT LAW
BAUER
MOYNIHAN
& JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

BONANZA FUEL V. DELTA WESTERN
CASE NO. 2:12-CV-0001-TMB
Page 10 of 10